**E–Z MART STORES, INC., Appellant,**

v.

**Roger HAVNER, as Next Friend of Kelly Havner and Shelly Havner, Minors; R.D. Crandell, as Administrator of the Estate of Diana Havner, Deceased; R.D. Crandell, Individually; and Mary Crandell, Individually, Appellees.**

**No. 9797.**

Court of Appeals of Texas,
Texarkana.

July 17, 1990.

Rehearing Overruled July 17, 1990.

Second Motion for Rehearing
Overruled Aug. 14, 1990.

Alan Harrel, Atchley, Russell, Waldrop & Hlavinka, Texarkana, Mike A. Hatchell, Ramey, Flock, Jeffus, Crawford, Harper, Tyler, for appellant.

Coy Johnson, Sulphur Springs, for appellees.

Before CORNELIUS, C.J., and BLEIL and GRANT, JJ.

## OPINION

BLEIL, Justice.

E–Z Mart Stores, Inc. appeals from a judgment favoring Roger Havner and others who brought this tort action for damages resulting from the death of Diana Havner. Based upon a jury verdict finding that E–Z Mart's negligence and gross negligence proximately caused the death of Diana Havner, the trial court entered judgment directing that E–Z Mart pay damages and punitive damages to Diana Havner's survivors.

E–Z Mart does not challenge the sufficiency of the evidence to support the finding that it was negligent in failing to provide a safe place to work. Our decision focuses on the question whether the evidence supports a finding that any of E–Z Mart's conduct proximately caused the death. We find a lack of evidence supporting the finding of proximate cause and reverse the judgment.

Diana Havner worked as a clerk at the E–Z Mart convenience store located on Interstate Highway 30 in Sulphur Springs. She reported before 11:00 p.m. August 1, 1987, to work the night shift, which was to end at 7:00 a.m. the next day. Shortly before 5:00 a.m., Sulphur Springs police officer Jay Owens drove onto the E–Z Mart parking lot, noticing a woman standing outside the store looking in. No one was in the store.

Inside the store, there was no sign of a struggle. A partially filled cup of coffee, a cigarette case, and a burned-down cigarette in an ash tray were found. Diana Havner was a smoker and a coffee drinker. Her purse, containing money and a handgun, was behind the counter. Money was missing from the cash register, although certain large bills were found where, presumably, Diana Havner had hidden them, as was the practice for the clerks at this store. Her automobile was parked in the parking lot.

Five days later, the Sulphur Springs police found Diana Havner's partially clad, badly mutilated body in a remote, undeveloped residential area of the city. The medical examiner determined that she died as a result of blunt injuries to the head which caused massive destruction of the skull. The criminal acts surrounding Diana Havner's death remain unsolved.

The trial court submitted questions to the jury concerning negligence, gross negligence, proximate cause, actual damages and punitive damages. The jury found that E–Z Mart failed to furnish a safe place to work, that this failure constituted negligence and gross negligence, and that such negligence proximately caused actual and punitive damages. Aside from a claim that the trial court erred in allowing a trial amendment increasing the amount of punitive damages sought to the amount found by the jury, all of E–Z Mart's complaints assail the legal and factual sufficiency of the evidence to support various findings of the jury. Because we find a lack of evidence to support the jury's finding of proximate cause, we decline to address the legal issues raised on this appeal which do not concern the proximate cause question.

The trial court charged the jury that proximate cause was that cause which, in a natural and continuous sequence, produces an event, and without which cause such event would not have occurred. The court further instructed that the act or omission complained of must be such that a person using ordinary care would have foreseen that the event, or some similar event, might reasonably result therefrom.

The concept of proximate cause has traditionally been more easily stated than applied. The proximate cause issue has perhaps evoked more disagreement in the field of tort law than any other question, which might explain why opinions on the subject are "in such a welter of confusion." W. PROSSER & W. KEETON, PROSSER AND KEETON ON THE LAW OF TORTS § 41 (5th ed. 1984). Proximate cause consists of two elements: cause in fact and foreseeability. *Nixon v. Mr. Property Management*, 690 S.W.2d 546 (Tex.1985); *Missouri Pac. R. Co. v. American Statesman*, 552 S.W.2d 99, 103 (Tex.1977); *Hopson v. Gulf Oil Corp.*, 150 Tex. 1, 237 S.W.2d 352 (1951).

■ The relationship between one's tortious conduct and others' criminal acts is not easily stated. Ordinarily, the criminal conduct of a third party is a superseding cause relieving the negligent actor from liability. But, the tortfeasor's negligence is not excused where the criminal conduct is a foreseeable result of such negligence. *Nixon v. Mr. Property Management*, 690 S.W.2d 546.

The RESTATEMENT (SECOND) OF TORTS § 448 (1965) addresses this issue, saying:

The act of a third person in committing an intentional tort or crime is a superseding cause of harm to another resulting therefrom, although the actor's negligent conduct created a situation which afforded an opportunity to the third person to commit such a tort or crime, unless the actor at the time of his negligent conduct realized or should have realized the likelihood that such a situation might be created, and that a third person might avail himself of the opportunity to commit such a tort or crime.

However, we are not concerned with the foreseeability element of proximate cause. For our purposes, we assume that it is foreseeable that a convenience store clerk might be murdered, abducted, robbed, sexually assaulted, or otherwise harmed by a criminal. We assume that in negligently failing to provide a safe place to work, E–Z Mart should have reasonably anticipated that harm might result to the worker. Thus, we narrow our analysis to the proximate cause element of cause in fact.

■ In determining whether any evidence supports a finding of the cause in fact element of proximate cause, we are aware that the finding cannot be established by mere guess or conjecture, but must be established by evidence of probative force. *McClure v. Allied Stores of Texas, Inc.*, 608 S.W.2d 901, 903 (Tex.1980). The cause in fact element is established when a fact finder can reasonably conclude that the negligent conduct was a substantial factor in bringing about the injury and without which no harm would have occurred. *McClure v. Allied Stores of Texas, Inc.*, 608 S.W.2d at 904; *Missouri Pac. R. Co. v. American Statesman*, 552 S.W.2d at 103.

A brief look at some of the facts relied upon to show negligence adds little to our analysis of the proximate cause issue. The essence of the proof at trial was that E–Z Mart should have had a different telephone system, better lighting in the store, an alarm system, a safe for the money taken in, two clerks instead of one, and better training on what to do when abducted.

■ The most favorable evidence presented to establish proximate cause came from one of the investigating officers with the city police department. Sergeant Robert Stidham had worked with the department for thirteen years and had been in police work since he graduated from high school. Stidham testified that he investigated the crime scene after Diana Havner was discovered missing. He examined her purse, which contained personal belongings, money, and her handgun. Based upon his investigation, Stidham formed several opinions. Among other

things, he opined that Diana Havner was abducted, kidnapped, sexually assaulted, robbed, and murdered. More pertinent to the causation issue was Stidham's opinion that if there had been a security system which sounded an alarm in the police station, Diana Havner would be alive today. Tex.R.Civ.Evid. 701 allows a lay witness to give an opinion or draw an inference based on his perception of the facts. While a "shorthand" rendering of the facts is allowable, opinions which are nothing more than guess, speculation and conjecture are not probative evidence. Stidham's opinion, that with a better alarm system Diana Havner would be alive today, was not one based on his perception of the facts. We view this opinion, although favorable to the jury's finding of proximate cause, as pure speculation. It is not probative evidence of cause in fact.

██ Another opinion was offered in this regard. Norman Gray, a former policeman for the city of Greenville, Hunt County deputy sheriff, and private investigator, testified for the Havners. At the time of trial, he was manager of Greenville Alarm Systems, and the trial court ruled that he was qualified to testify as an alarm expert. After testifying concerning various alarm systems, he gave, over objection, his opinion about whether Diana Havner would be alive had there been an alarm system at E–Z Mart at the time of her death. He testified as follows:

> I would have to say it this way: You cannot be completely sure, but I feel like all the time that was consumed in taking the money and getting the lady to leave the store, the police would have had a great opportunity to arrive before she was carried away from the place of business.

We view this opinion, too, as being mere conjecture and speculation—not probative evidence of proximate cause. Being qualified as an alarm expert authorized Gray to testify about scientific, technical or other specialized knowledge. Tex.R.Civ.Evid. 702. However, Gray's opinion set out above was merely his speculation or feelings about nonscientific or nontechnical

matters and does not rise to probative evidence of proximate cause. *See generally* 2 R. Ray, Texas Law of Evidence Civil and Criminal §§ 1399–1401 (Texas Practice 1980 & Supp.1990).

██ A plaintiff must only show that the greater probability is that the negligent conduct of a defendant caused harm, and this proof may be made by circumstantial evidence. *Birmingham v. Gulf Oil Corporation,* 516 S.W.2d 914, 917 (Tex.1974). The difficulty which this case presents is in determining whether there is evidence from which reasonable minds can infer that E–Z Mart's conduct was a cause in fact of Diana Havner's death. As significant as the evidence in this record is, equally significant is the absence of certain evidence. This case presents many unknowns. We do not know who the assailant was, whether he, she or they were armed, whether Diana Havner was ordered from the premises, taken by ruse, or otherwise; and we do not know if she was actually abducted. There is far too little known about the causes or motivations behind the criminal acts committed against Diana Havner for this Court to conclude that there is any evidence that any conduct by E–Z Mart caused the harm to Diana Havner.

This case is similar to an earlier case in which the cause in fact element of proximate cause was the key issue, that of *East Texas Theatres, Inc. v. Rutledge,* 453 S.W.2d 466 (Tex.1970). In that case, a theater patron threw a bottle, hitting the plaintiff as she left the theater, and the plaintiff sought to show that the theater was at fault by allowing the theater crowd to become rowdy. The plaintiffs sought to show that the implementation of various security measures would have prevented the harm to her. The court held that there was no evidence to prove the cause in fact element of proximate cause. The court, citing Prosser for the proposition that there must be some reasonable connection between the defendant's conduct and the harm to plaintiff, held that:

> [T]he plaintiffs have failed to offer evidence of probative force to establish the cause-in-fact element of proximate

cause.... [I]t cannot be said from this record that had the defendant removed the "rowdy persons" from the premises, the bottle thrower would not have thrown the bottle. The record in this case clearly shows a complete lack of proof that the bottle would not have been thrown "but for" the failure of the defendant to remove "rowdy persons" from the premises.

453 S.W.2d at 469.

Similarly, the record in the case before us wholly fails to show that Diana Havner would not have been harmed *but for* the negligence on the part of E–Z Mart. In making this determination of no evidence, we consider only the evidence tending to support the finding, view it in the light most favorable to the finding, give effect to all reasonable inferences therefrom, and disregard all evidence to the contrary. *Glover v. Texas General Indemnity Company*, 619 S.W.2d 400 (Tex.1981). Analyzing the evidence and applying this standard of review, we nevertheless are unable to conclude that E–Z Mart's conduct was a substantial factor in bringing about the harm to Diana Havner and *but for* which no harm would have occurred. We, like the court in *East Texas Theatres*, are compelled to say that, "it would be just a guess as to what subjective effect" E–Z Mart's conduct may have had upon the criminal actor. *East Texas Theatres, Inc. v. Rutledge*, 453 S.W.2d at 469. Accordingly, we hold the jury's finding of proximate cause to be supported by no evidence.

Several more recent cases have been suggested as evincing a change in the law since the *East Texas Theatres* decision. Counsel for the Havners asserts flatly that the question of proximate cause is to be decided by the jury, citing *Nixon v. Mr. Property Management*, 690 S.W.2d 546. This case, and others of a similar nature, such as *Castillo v. Sears, Roebuck & Co.*, 663 S.W.2d 60 (Tex.App.–San Antonio 1983, writ ref'd n.r.e.); and *Walkoviak v. Hilton Hotels Corp.*, 580 S.W.2d 623 (Tex.Civ. App.–Houston [14th Dist.] 1979, writ ref'd n.r.e.), are not germane to the issue before us. Those cases primarily pertain to whether criminal conduct is something

foreseeable and only incidentally concern the cause in fact element of proximite cause. Furthermore, those cases are summary judgment cases which do not hold that cause in fact existed in the circumstances in those cases. Arguably, however, those cases might be said to indicate that, under circumstances like those present in this case, there is some evidence of cause in fact. Thus, if we are wrong in holding that there is no evidence of cause in fact, we now consider whether that evidence is sufficient to support the finding of proximate cause.

Our review of the evidence in this connection reveals that the evidence of cause in fact is insufficient under the review standard of *Pool v. Ford Motor Co.*, 715 S.W.2d 629 (Tex.1986), and *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661–62 (1951). The evidence does not establish whose conduct proximately caused Diana Havner's death. For example, the evidence concerning the lack of an alarm system is not probative of proximate cause: the police reaction time to an alarm was shown to be substantially greater than the time it would take to rob the store and kill or abduct the clerk. And, under the evidence, a better telephone system, different lighting, or more extensive training would not have prevented the death. In fact, none of the measures that E–Z Mart failed to take to provide a safer place to work was shown to be any greater protection to the clerk than the handgun in her purse proved to be. None of E–Z Mart's conduct was shown to have proximately caused Diana Havner's death. If there is evidence which can be said to establish the finding of proximate cause, we conclude that it is wholly insufficient to support that finding.

The judgment of the trial court is reversed, and a take nothing judgment is here rendered.

GRANT, J., dissented and issued an opinion.

GRANT, Justice, dissenting.

The evidence in this case is legally and factually sufficient to support the jury's finding of proximate cause.

Although the majority did not base its decision on the foreseeability aspect[1] of proximate cause, a brief mentioning of the evidence on this aspect is appropriate. E–Z Mart had owned and operated the Sulphur Springs store for approximately four months at the time of the occurrence. This was the first violent crime in that E–Z Mart location. There was evidence that four armed robberies had occurred at a Family Mart store and a Shop A Minute store in Sulphur Springs within a three-year period prior to the occurrence in question. Between 1986 and 1987, there were a significant number of robberies of E–Z Mart stores, and the majority of those incidents occurred during the late shift. In 1986 and 1987, a total of seventy-four robberies occurred in E–Z Mart stores between the hours of 10:00 p.m. and 6:00 a.m., and twenty-eight robberies occurred between the hours of 2:00 p.m. and 11:00 p.m. In 1986 and 1987, there were four violent crimes in E–Z Mart stores against store employees: one assault, one rape, one stabbing and one abduction with murder. In 1985, E–Z Mart employees were the victims of three rapes, an abduction, and two assaults at E–Z Mart stores. In 1984, there were three assaults, an abduction and a stabbing in E–Z Mart stores. In 1983, there were five assaults, a rape, a murder, and a stabbing in E–Z Mart stores. This information was based upon the experience of 247 E–Z Mart stores located within Texas and surrounding states. One of Havner Estate's expert witnesses stated that convenience stores are notorious targets for armed robberies and that security precautions need to be taken to prevent robbery and the associated acts of violence. Thus, the jury had a basis for its determination that violent crimes against E–Z Mart employees were reasonably foreseeable.

The majority has concluded that the evidence did not support the jury's finding that E–Z Mart's negligence was a cause-in-fact of Havner's death. Cause-in-fact embraces the cause which produces an event and without which the event would not have occurred. *Nixon v. Mr. Property Management*, 690 S.W.2d 546 (Tex.1985).

The majority opinion relies heavily on the case of *East Texas Theatres, Inc. v. Rutledge*, 453 S.W.2d 466 (Tex.1970), which the majority says is similar to the present case. However, I am reminded of the old adage that the difference between a duck's legs is that they are similar. It is true that the *Rutledge* case is similar to the present case in that they both involve tort actions. In the *Rutledge* case, however, the theater had failed to eject some unruly patrons, and the plaintiff was later hit with a bottle thrown from the balcony. There was no evidence to show that the person who threw the bottle was one of the same persons who had caused a disturbance earlier. Thus, there was no showing that ejection of the unruly patrons would have prevented the injury. In the present case, the identity of the person or persons committing the criminal act is not a key issue in determining whether proper security measures could have prevented the act. Furthermore, in the present case, two security experts testified as to causation, but in the *Rutledge* case, there were no expert opinions to support causation.

E–Z Mart argues that the only basis for a finding of proximate cause is that of inferences based on other inferences. There are numerous cases in Texas and other jurisdictions condemning the pyramiding of inferences.[2] However, it is permissible to draw a number of inferences

---

1. Proximate cause requires reasonable foreseeability. *McClure v. Allied Stores of Texas, Inc.*, 608 S.W.2d 901 (Tex.1980).

2. Judge Carlos Cadena, Chief Justice of the San Antonio Court of Appeals, in an article entitled *The Pyramiding of Presumptions and Inferences in Texas*, 4 St. Mary's Law Journal 1 (Spring 1972), concludes that the rule against pyramiding inferences is, in fact, not applicable in most of the cases in which it is invoked. He then categorizes these cases as follows: (1) cases not involving the building of an inference upon an inference; (2) cases in which the evidence does not justify the drawing of the first inference; and (3) cases in which the relationship between the fact inferred and the fact sought to be established by the second inference is not strong enough to justify the drawing of the second inference.

from a single fact situation. *Farley v. M M Cattle Co.*, 529 S.W.2d 751 (Tex.1975).

What is prohibited by the rule against pyramiding inferences is the basing of one factual inference upon another factual inference. Even when all of the facts are *proven by direct evidence*, there is a reasoning process to determine the conclusions to be drawn from the facts. This is not the type of inference that constitutes a pyramiding of inferences. If conclusions could not be drawn from circumstantial evidence, then direct evidence would always be required on each element of a case. In the determination of proximate cause, the jury is allowed broad latitude to infer proximate cause from the evidence and the circumstances surrounding the evidence. *Figure World, Inc. v. Farley*, 680 S.W.2d 33 (Tex.App.—Austin 1984, writ ref'd n.r.e.). The rule against pyramiding inferences does not forbid inferences that may arise from facts established by circumstances alone. *Strain v. Martin*, 183 S.W.2d 246 (Tex.Civ.App.—Eastland 1944, no writ).

E–Z Mart's specific contention is that it is speculative whether or not a hidden alarm system could have safely been activated if one had been available and whether or not the police response time to an activated alarm would have been prompt enough to prevent Havner's abduction. Thus, E–Z Mart argues that the evidence will not support a finding that but for the lack of security Havner would be alive today.

The undisputed evidence showed that Havner was working alone at the E–Z Mart on the 11:00 p.m. to 7:00 a.m. shift. At approximately 4:47 that morning, a police officer found the store open, but there was no clerk on the premises. Two hundred and thirty dollars were missing from the cash register. Five days later, Havner's badly mutilated body was found face up with the legs spread apart, and her pants had been removed. Her skull was crushed to the point that her eyeballs and eyesockets could not be found and one of her ears was missing. A jury could reasonably infer from this evidence that Havner had been robbed, abducted, raped and murdered.

The majority suggests that Havner may not have been abducted. The jury did not have to jump to a conclusion on this issue; the conclusion jumps out of the circumstances. Inferences are based upon probabilities. There is nothing in evidence to suggest that Havner would have voluntarily abandoned her job and her purse and left the store unattended and unlocked. It was not credulity that brought the jurors to their conclusion, but logic applied to the evidence.

The question then becomes whether the jury had sufficient evidence to reasonably conclude that E–Z Mart's negligence was a cause of Havner's death. The testimony indicated that, when E–Z Mart purchased the convenience store, it reduced security measures by placing a countertop over the safe, thereby rendering it inoperable and diminishing cash control, by failing to provide security and robbery training, by removing the existing panic alarm system from the store and by obstructing the windows. The evidence showed that the previous owner had an alarm system which connected to police headquarters so that the alarm could be activated by a button under the cash register, and that it also provided the employees with a portable alarm that they could wear which would also activate a signal at police headquarters. E–Z Mart maintained only a one-way telephone in the cashier's area that allowed the E–Z Mart management to call in, but the employee could not call out except by using a pay telephone on the outside of the store. There was also testimony that at the hour when Havner was taken from the store, the police could have been on the scene within one minute. From this evidence alone, the jury could have reasonably concluded that E–Z Mart's negligence was a cause of Havner's death.

In addition to having before it the proof of E–Z Mart's reduction of security, the jury also had testimony from experts. Dr. Norman Bottom testified as a security ex-

pert.[3] Bottom testified that alarm systems are critical to the safety of the store clerk. He also testified about the importance of proper security training for employees. He further testified about the deterrent effect of having a store properly lighted and of there being good visibility through the store windows from the outside. Bottom testified that E–Z Mart had inadequate supervisory staffing for security purposes because there were only two security people to supervise 247 stores. He also testified that having only one clerk employed on the late shift was inadequate security for that shift and that similar stores having two clerks from dusk to dawn had fewer robberies. He concluded that the E–Z Mart store was deficient in all of these areas of security. Two of the experts, Stidham and Gray, testified that Havner would be alive today if E–Z Mart had had a security system in the store. This testimony is tantamount to saying that this lack of security was the cause of Havner's death.

It is true that there is no evidence of the specific details of how the crime occurred, but there is sufficient evidence from which the jury could draw reasonable factual inferences. The majority reverses and renders this case because evidence does not show all elements with absolute certainty by direct evidence. An inference is never a certainty, but it may be plain enough to justify a finding of fact.[4] Almost any fact embraces within itself some element of inference and is, to some extent, the result of a process of reasoning. *Galveston, H. & S.A. Ry. Co. v. Noelke*, 59 Tex.Civ.App. 347, 125 S.W. 969, 970 (1910).[5] The majority opinion negates the right of the jury to make reasonable inferences from the evidence and places an impossible burden on the Havner Estate.

Furthermore, the majority negates the expert opinions offered on behalf of the Havner Estate because the majority disagrees with these experts on their conclusion concerning proximate cause. The testimony of the experts on causation was more than speculation. The Texas Supreme Court has established that an expert can testify to proximate cause. In the case of *Louder v. DeLeon*, 754 S.W.2d 148 (Tex. 1988), the Supreme Court held that a highway patrolman could properly testify that the plaintiff's failure to yield the right-of-way was a proximate cause of the accident in that case. From the facts recited in the Court of Civil Appeals opinion in *Louder*, it appears that the only issue in that case was cause-in-fact.[6] This indicates that the patrolman's judgment about cause-in-fact was within his scope of expertise. *See* 2 R. RAY, TEXAS LAW OF EVIDENCE CIVIL AND CRIMINAL § 1401 (Texas Practice Supp. 1990).

In the present case, the two witnesses who testified to causation were qualified as expert witnesses. The majority opinion ignores the fact that these witnesses were qualified as experts and discards their testimony as speculations by lay witnesses, *citing* TEX.R.CRIM.EVID. 701. Robert Stidham was the detective sergeant from the Sulphur Springs Police Department in charge of the investigation in the Havner homicide. His qualifications included basic and advanced certificates from the Law Enforcement Standards and Education Agency, attendance at numerous in-service training programs on crime scene investigation, drug and narcotics investigation, auto thefts investigation, basic fingerprints, advanced fingerprints and latent print training. He had worked with the

---

**3.** Dr. Norman Bottom is the editor-in-chief of the security administration publication, the founding chairman of the Board of the Nonprofit International Foundation for Protection Officers. Bottom has credentials of practical experience and education in the field of security. He has taught security for seven years, is affiliated with numerous groups concerned with security, has conducted security management seminars, has authored four books on security, has served as an expert in that area in 320 cases,

and has written approximately 100 articles on the subject of security.

**4.** *Tortora v. State*, 269 N.Y. 167, 170, 199 N.E. 44 (1935).

**5.** Cited under 2 R. RAY, TEXAS LAW OF EVIDENCE CIVIL AND CRIMINAL § 1394 (Texas Practice 1980).

**6.** *DeLeon v. Louder*, 743 S.W.2d 357 (Tex.App.— Amarillo 1987), *writ denied*, 754 S.W.2d 148 (Tex.1988).

Sulphur Springs Police Department for thirteen years, and before that, he had worked for the Mount Pleasant Police Department. E–Z Mart did not object when he testified concerning the causation of Havner's death, so they cannot now complain that he lacked expertise to reach the conclusion of E–Z Mart's negligence being a causation.

Norman Gray also testified that E–Z Mart's negligence was a cause of Havner's death. Gray is the owner of the Greenville Alarm System Company, which provides security systems for residents and commercial businesses. His background included several years of work as a criminal investigator for the Greenville Police Department, work with the Hunt County Sheriff's Office as chief deputy, and work as a private investigator. He had been involved in the business of installing security systems for more than twenty years. He testified to the opinion that Havner would be alive if the E–Z Mart store had had a security system that she could have activated on the night in question. E–Z Mart objected to this opinion on the basis that Gray was not qualified to give this opinion. The court overruled the objection on the basis that Gray was qualified. E–Z Mart has not appealed the trial court's ruling on this objection and therefore cannot complain of his expert opinion. There is no basis in law for the holding of the majority that the opinions of Stidham and Gray have no probative value.

Even under the standard for reviewing evidence for factual sufficiency, we are required to consider and weigh all the evidence. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951). The jury is the exclusive judge of the credibility of the witnesses and the weight to be attached to their testimony. The jurors may believe a witness although that witness has been contradicted, and they may accept part of the testimony of one witness and disregard the remainder. *Creech v. Thompson*, 156 Tex. 561, 297 S.W.2d 817 (1957). These principles are true as to experts as well as to ordinary witnesses. *Gregory v. Texas Employers Insurance Association*, 530 S.W.2d 105 (Tex.1975).

In spite of these axiomatic standards for evaluating the sufficiency of the evidence, the majority took only the evidence it wanted to believe and ignored the rest. The majority stated that the evidence showed that the police reaction time to an alarm was shown to be substantially greater than the time it would take to rob the store and abduct the clerk. The jury had the following testimony before it concerning police response time to an alarm system. As to time elapsed during robbery:

A. You're going to have to be awful fast to take a clerk out of the store with an alarm system going off. In this town I've never seen it happen except in this case and there wasn't an alarm. You would have to be awful fast. It might work in Dallas but I don't think it would work here.

. . . .

Q. They could have gotten her out of the store in a minute, couldn't they?

A. Well, it was robbed, so I suppose you could get a person out of a store.

Q. In a minute?

A. Somewhere in that time frame. I don't know in this one.

Q. It could be done in a minute, couldn't it sir?

A. Yes, it you had complete cooperation, I suppose you could take them straight out, right outside the front door and put them in a car and leave.

As to police response time:

A. 4:00 o'clock in the morning, with no one on the street like that, working districts as we do, probably a minute to a minute and a half, some quicker. Just according to where the police car is at. And, there is priority given on any type of alarm. I mean, it's an automatic dispatch immediately under any condition.

. . . .

Q. And, you acknowledge that the average response time in Sulphur Springs is two or three minutes, don't you?

A. No. I think we said during heavy traffic hours. We were talking about two and a half or three minutes.

From this testimony, the jury could have concluded that the alarm system would have been effective in preventing Havner's death.

The majority also implies that the fact that Havner did not use the gun in her purse to defend herself suggests that she also would not have had an opportunity to set off the alarm system. According to the testimony, part of the alarm system that had been discontinued by E–Z Mart consisted of an apparatus to activate the alarm at the police station (it was silent inside the store) that could be hung around the neck of an employee like a necklace or put on the arm. It could be worn underneath the blouse or some place where it would not be detected and could be triggered through the clothing without the robber being aware that the alarm had been pushed. The jury could have reasonably inferred that this type of alarm would have saved Havner's life.

In the face of all of this evidence, I cannot understand how the majority can hold that there is no evidence or insufficient evidence to support the jury finding on causation. I respectfully dissent.