COURT OF APPEALS









COURT
OF APPEALS

EIGHTH
DISTRICT OF TEXAS

EL
PASO, TEXAS

 

PRIMAVERA BALTAZAR a/k/a                          )

PRIMAVERA HURTADO,                                  )

                                                                              )               No.  08-02-00447-CR

Appellant,                          )

                                                                              )                    Appeal from the

v.                                                                           )

                                                                              )                
205th District Court

THE STATE OF TEXAS,                                     )

                                                                              )           
of El Paso County, Texas

Appellee.                           )

                                                                              )               
(TC# 20020D03775)

                                                                              )

 

 

O
P I N I O N

 

Appellant
Primavera Baltazar a/k/a Primavera Hurtado appeals her conviction for the offense of capital
murder.  See Tex.Pen.Code Ann. '
19.02(b)(1), 19.03(a)(3)(Vernon 2003 & Supp.
2004).  The jury found Appellant guilty
of the charged offense and she was sentenced to a mandatory term of life
imprisonment.  See Tex.Pen.Code Ann. '
12.31(a)(Vernon 2003). 
In her sole issue on appeal, Appellant contends the trial court erred in
its rulings on the use of leading questions under Texas Rule of Evidence 611(c)
during Appellant=s
case-in-chief, which unduly harmed her defense. 
We affirm.








In January 2000,
Mercedes Caballero, the victim, was found stabbed to death in her home.  The victim was accused of having an affair
with the husband of Appellant=s
friend and codefendant, Ana Almaraz-Montti.  Ms. Almaraz paid
Appellant and Rafael Guillen $10,000 to kill Ms.
Caballero.  The State=s primary witness, Gabriela Barrios,
was a witness to the arrangements and subsequent conversations where the Appellant
described the murder.

During Appellant=s case-in-chief, witnesses called to
testify included:  Detective Carlos
Ortega; Maria Del Pilar Gonzalez; Detective Arturo
Perez; Officer Rick Jordan; and Detective Arturo Ruiz, Jr.  In her sole issue, Appellant contends the
trial court erred in allowing the State to use leading questions to Aexamine@
Ms. Gonzalez and erred in refusing to allow Appellant to use leading questions
during her Across-examination@ of the police officers and the
detectives during her case-in-chief.

Texas Rule of
Evidence 611 governs the interrogation and presentation of witnesses at
trial.  See Tex.R.Evid. 611. 
Under this Rule, the trial court has reasonable discretion to control
the mode and order of interrogating witnesses and presenting evidence in order
to:  (1) make the interrogation and
presentation effective for the ascertainment of the truth; (2) avoid needless
consumption of time; and (3) to protect witnesses from harassment or undue
embarrassment.  See Tex.R.Evid. 611(a).  A witness may be cross-examined on any matter
relevant to any issue, including credibility. 
See Tex.R.Evid. 611(b).  Except as may be necessary
to develop the testimony of a witness, leading questions should not be used on
direct examination.  See Tex.R.Evid. 611(c).  However, leading questions should be
permitted on cross-examination.  See
id.  When a party calls a hostile
witness, an adverse party, or a witness identified with an adverse party,
interrogation may be by leading questions. 
Id.








A leading question
is one which instructs the witness how to answer or puts words into the witness= mouth to be echoed back.  Gab Business Serv., Inc. v. Moore, 829 S.W.2d 345, 351 (Tex.App.--Texarkana 1992, no writ).  Permitting leading questions on direct
examination is a matter within the sound discretion of the trial court.  See Wyatt v. State, 23
S.W.3d 18, 28 (Tex.Crim.App. 2000).  Unless Appellant was unduly prejudiced by
virtue of such questions, no abuse of discretion can be shown.  Id.; Hernandez v. State, 643
S.W.2d 397, 400 (Tex.Crim.App. 1982); see also
Ballew v. State, 452 S.W.2d 460, 461 n.1 (Tex.Crim.App.
1970)(AThe
matter of permitting the asking of leading questions rests in the sound
discretion of the trial judge, and unless the defendant can show that he was
unduly prejudiced by virtue of such questions, no reversal of his conviction
can be had.@).  Harm must also be shown with respect to a
trial court=s refusal
to permit Appellant to lead on cross-examination.  See Craig v. State, 594
S.W.2d 91, 96 (Tex.Crim.App. 1980). 

Permitting
Leading Questions by the State

During Appellant=s case-in-chief, Maria Del Pilar Gonzalez, the sister of witness Gabriela Barrio, was
called to testify.  In her appellate
brief, Appellant states that Ms. Gonzalez was called
for the purpose of impeaching Ms. Barrio=s
credibility.  On direct examination, Ms.
Gonzalez admitted that she had lied to the police in her written statement when
she stated that Appellant had directly told her certain information about the
murder.  Ms. Gonzalez admitted that
everything she knew about what had happened was based on what her sister had
told her because she, Ms. Gonzalez, was not present.  After these admissions, Appellant=s counsel asked to treat Ms. Gonzalez
as an Aadverse
witness@ in order
to ask leading questions and the trial court granted the request.  In her continued testimony, Ms. Gonzalez
admitted that she did not tell police officers that she was just repeating what
her sister had told her.  Ms. Gonzalez
also testified that in her statement she had stated that her sister had told
her that she had taken Atwo
men@ and Appellant to the airport, but now
recalled her sister saying Athem,@ not Atwo
men.@








In
cross-examination, the trial court permitted the State prosecutor to ask
leading questions.  During this
testimony, Ms. Gonzalez affirmed that she learned the details of the murder
from Ms. Barrio who had heard it from Appellant and that Ms. Barrio had never
told her there were Atwo
guys.@  Ms. Gonzalez also affirmed that she received
some benefits because Ms. Barrio had came forward and was willing to
testify, which included being allowed to stay in the United States and having
drug charges dismissed against her.  On
redirect, Ms. Gonzalez again confirmed that as a benefit she had criminal
charges against her dismissed and was permitted to stay in the United
States.  Ms. Gonzalez again stated that
she lied to the police because she was not present with Ms. Barrio and
clarified that Ms. Barrio told her she took Athem@ to the airport.

On appeal,
Appellant argues that the trial court misinterpreted Rule 611(c) when it
permitted the State to ask leading questions during its cross-examination
because Ms. Gonzalez had been cooperating with the police and was a witness
clearly aligned with the State.  In
support of her argument, Appellant points this Court to the reasoning in Perkins
v. Volkswagen of America, Inc., 596 F.2d 681 (5th Cir. 1979) and Coronado
v. Employees Nat=l
Ins. Co., 577 S.W.2d 525 (Tex.Civ.App.--El Paso
1979), aff=d,
596 S.W.2d 502 (Tex. 1979).  However, we
find these cases to be distinguishable.








In Perkins,
the Fifth Circuit Court held that the trial court erred in ruling that the
plaintiff could not interrogate defendant=s
employee, a witness identified with an adverse party, by leading questions in
contradiction to Fed.R.Evid. 611(c).  Perkins, 596 F.2d at
682.  The Perkins Court
nevertheless found that the plaintiff had failed to demonstrate he was so
prejudiced by the ruling as to justify reversal.  Id. 
In this case, Appellant was permitted to interrogate Ms. Gonzalez
as an Aadverse party,@
therefore the Perkins holding is inapplicable as it does not address her
complaint concerning the trial court permitting the State to lead Ms. Gonzalez
during its cross-examination.

In Coronado,
the plaintiff asserted the trial court erred in allowing
defendant=s counsel
to lead a witness and erred in refusing to allow plaintiff=s counsel the right to lead
adverse witnesses.  Coronado, 577 S.W.2d at 531.  In
that case, this Court found that since the witness at issue was listed as a
party to the suit at the time of trial, he was an adverse party whom the
plaintiff should have been permitted to cross-examine.  Id. 
Because there was no showing that the same witness was adverse to the
defendant, this Court saw no reason why defendant=s
counsel should have been permitted to ask leading questions.  Id. 
However, no abuse of discretion was found because the facts sought to be
established through the witness were placed in the record through proper
questions.  Id.  In this case, Ms. Gonzalez was called by
Appellant and it is clear that the State was permitted to ask leading questions
pursuant to Tex.R.Evid. 611(b), not Tex.R.Evid. 611(c).








Appellant has
presented no authority nor any relevant case law to support
her implicit contention that Ms. Gonzalez=
status as an Aadverse
witness@
necessarily prohibited the trial court from permitting the State to ask
leading questions under Tex.R.Evid. 611(b).  Moreover, in reviewing the record, we find
that Appellant elicited the same substantive testimony from Ms. Gonzalez
during her direct and redirect examination of the witness that she complains
was introduced by the State through improper questioning.  Appellant has failed to show how she was unduly
prejudiced by the State=s
leading questions, therefore no abuse of discretion by
the trial court has been shown with respect to Ms. Gonzalez= testimony.  We overrule Appellant=s
Issue One as to this portion of her complaint on appeal.

Appellant also
complains of the trial court rulings, which prevented her from asking leading
questions to witnesses Officer Rick Jordan, Detective Arturo Perez, and
Detective Arturo Ruiz during her case-in-chief.[1]  Specifically, she argues the trial court=s erroneous interpretation of Rule
611(c) crippled her attempt to impeach Ms. Barrio through police officer
testimony and the court=s
decision to treat the police officers as her witnesses ultimately caused her
conviction.  We must disagree.








Although Officer
Rick Jordan was a witness during the State=s
case-in-chief, Appellant called Officer Jordan to testify as a witness after
the State had rested and during her case-in-chief.  Officer Jordan took photographs and videotape
at the crime scene.  On direct
examination, Officer Jordan was asked to identify several photographs.  Defense counsel asked Officer Jordan, ANow, Officer, Defendant=s Exhibit Number 22--I mean, State=s Exhibit 22, is a picture of some duct
tape?@  After the State objected to the question as
leading, defense counsel rephrased the question and Officer Jordan responded, AYes, sir.  It is a picture of a roll of tape.@ 
Officer Jordan further testified that the roll of tape was manufactured
by 3M and is commonly referred to as duct tape. 
Officer Jordan also identified photographs, which showed two other rolls
of duct tape that were found in a red tool chest in
the garage at the deceased=s
house.  Defense counsel then asked the
following objected-to question, AAll
right.  So there was duct tape all over
this house.  Is that fair to say?@ 
Defense counsel then rephrased the question as AHow
many rolls of duct tape did you see in that house?@
and Officer Jordan replied, AA
total of three, sir.@  The photographs at issue were admitted into
evidence at trial.  There is nothing in
the record to indicate that Appellant intended to call Officer Jordan as an
adverse or hostile witness such that she could be permitted to ask leading
questions during direct examination. 
Further, Appellant has failed to show any harm since the same evidence
she sought to elicit from Officer Jordan was introduced through proper
questioning.  Appellant was not unduly
prejudiced by the trial court rulings as to Officer Jordan=s testimony.

Appellant called
Detective Arturo Ruiz, Jr. to testify for the first time during her 

case-in-chief.  In her brief, Appellant asserts that
Detective Ruiz was called to establish that Ms. Caballero=s hand bag was on a counter top in the
home and to contradict Ms. Barrio=s
written statement and testimony that Ms. Caballero untied herself and attempted
to drag herself to a phone.  On direct examination, Detective Ruiz
testified that he was assigned to oversee the crime scene at the time.  Detective Ruiz stated that he found the keys
to the car and to the house lying on the other side of a bag with the letters AS-A and U-S@
on it on top of a counter top.  After
Detective Ruiz had identified the bag in a photograph already in evidence,
defense counsel asked, AYou can=t
see that it=s a bag,
hardly, in the photo.@  The State objected to the question as
leading, defense counsel rephrased the question, and Detective Ruiz replied, A Yes.  I am trying to describe it.  It is like a hand-- a lady=s purse.@








Later in his
testimony, Detective Ruiz was questioned about his recollection of drag marks
in rooms at the crime scene and the location of telephones in the home.  Detective Ruiz recalled seeing telephones in
the kitchen and in the master bedroom. 
Detective Ruiz identified a photograph already in evidence as showing an
overall view of the living room area where the victim was found.  He stated that there were no drag marks
around or in the living room area and he did not recall seeing any drag marks
in the crime scene.  Defense counsel then
asked, AOkay.  In order to get to any one of the other
phones in either the master bedroom or the master bathroom, it would have
had--.@  Following the State=s
objection to leading, defense counsel rephrased the question, which was
objected-to on different grounds.  In his
continued testimony, Detective Ruiz stated that there were no
crawl marks in the hallway nor any drag marks near the pantry door.

With respect to
whether there was any evidence of the victim untying herself, defense counsel
asked the following objected-to question, AWas
there any indication that the victim had untied herself from the duct tape, maybe
a curled piece of duct tape or whatever?@  Defense counsel rephrased the question, which
the State then objected to on other grounds. 
The trial court, however, allowed a response and Detective Ruiz
answered, AI
personally didn=t
observe any indication that the victim untied herself.@

Appellant did not
call Detective Ruiz as an adverse or hostile witness and nothing in his
testimony indicates that he should have been treated as such.  Appellant has failed to show any harm by the
State=s
sustained objections to her leading Detective Ruiz=s
testimony since Appellant elicited the same evidence through proper
questioning.  Therefore, Appellant was
not unduly prejudiced by the trial court=s
rulings concerning the testimony of Detective Ruiz.

At trial,
Appellant called Detective Arturo Perez, a witness during the State=s 








case-in-chief,
to testify after the State had rested and during her case-in-chief.  In her brief, Appellant asserts that
Detective Perez was called in order to impeach Ms. Barrio and argues that the
trial court=s
erroneous rulings on leading questions prevented her from effectively examining
the State=s own
witness.  Detective Perez has received
training in taking statements from witnesses and took Ms. Barrio=s statement in this case.  Detective Perez explained that he tries his
best to type out the statement as close as possible to what the witness is
saying to him.  Witnesses are given an
opportunity to review the statement before signing it and then any corrections
are made.  Detective Perez uses a
computer in preparing statements and stated that is not hard to make a
correction.  Defense counsel then asked
Detective Perez, AIt is not
like having a typewriter, where you are going to say, Oh, man, you want me to
go back and, you know, cross all that out and then make a correction, right?@ 
The State objected to the question, defense counsel rephrased the
question, and Detective Perez testified that back in November 2000, he used the
department=s RMS
system, which is basically like a computer, and it can delete and erase.

Later on during
direct examination, defense counsel asked to treat Detective Perez as an
adverse witness during questioning about details contained in Ms. Barrio=s statement.  The trial court denied the request based on
its reasoning that the witness was not offered as an adverse witness and there
was no indication that he was adverse.  In
the testimony that followed, defense counsel rephrased questions which were
objected to as leading and Detective Perez provided responses to these properly
posed questions.  During direct
examination, Appellant elicited testimony from Detective Perez in which he
stated he did not recall nor see in Ms. Barrio=s
statement anything about any drive, any mention that Appellant was going to
help Ms. Montii get even, anything about buying tape,
any mention that the knife went in like butter when Ms. Caballero was
killed, or anything about Ms. Caballero untying herself.  Further, contrary to Ms. Barrio=s testimony, Detective Perez recalled
telling Ms. Barrio to bring the gun to him.








After reviewing
Detective Perez=s
testimony, we find the trial court did not abuse its discretion in denying
Appellant=s request
to treat Detective Perez as an adverse witness. 
By rephrasing the objected-to questions, Appellant introduced the
evidence she sought to elicit from Detective Perez=s
testimony, including testimony concerning inconsistencies between
Ms. Barrio=s
testimony and her statement as read into the record.  Appellant fails to show any harm or that she
was unduly prejudiced by the trial court=s
rulings concerning leading questions posed to Officer Jordan or Detectives Ruiz
and Perez.  Under such circumstances, we
cannot conclude the trial court abused its discretion in refusing to permit
Appellant to ask leading questions during her examination of these
witnesses.  Issue One
is overruled in its entirety.  

We affirm the
trial court=s
judgment.

 

May
13, 2004

DAVID WELLINGTON
CHEW, Justice

 

Before Panel No. 2

Barajas, C.J., McClure, and Chew, JJ.

 

(Do Not Publish)











[1]
In her brief, Appellant also asserts that she was prevented from asking leading
questions to Detective Carlos Ortega, yet she fails to provide any argument or
citation to the record to leading questions she was barred from asking of this witness, therefore we find that she has waived any complaint
with respect to the examination of Detective Ortega.  See Tex.R.App.P. 38.1(h).